KAHN, Judge.
On March 1, 1990, appellant Bernard Vernon Brown shot and killed Archie Richardson at the Hilltop Apartments in Jacksonville. Appellant did not deny that he shot Richardson, but maintained that such shooting was justifiable because of appellant’s well-founded fear that Richardson was armed and posed a threat of immediate great bodily harm to appellant. Brown claimed he did not know he had killed Richardson. Upon learning that Archie Richardson was indeed dead, and not merely frightened or deterred, appellant presented himself at a Jacksonville police station, where he gave a voluntary statement to an investigating homicide detective. In the course of this statement, appellant first presented his self-defense version of the shooting. This theme carried through to the trial.
*580 The state charged Brown with second-degree murder and possession of a firearm by a convicted felon. The charges were severed, and the state brought Brown to trial on the charge of second degree murder. The jury returned a verdict of guilty of manslaughter, a lesser included offense. Before sentencing, Brown pled guilty to possession of a firearm by a convicted felon. Appellant now argues: (1) the trial court erred in allowing the state to exercise peremptory challenges as to two black prospective jurors; (2) the trial court erred by excluding testimony as to appellant’s prior consistent statements concerning his justification for being concerned about Richardson; (3) the trial court erred by allowing the prosecutor to emphasize appellant’s criminal record, and to essentially use appellant’s prior convictions as substantive evidence of guilt; (4) the trial court erred in refusing to reinstruct the jury as to excusable homicide and justifiable homicide, at the time the trial court, upon request of the jury, reinstructed on second-degree murder and manslaughter; and (5) the trial court erred in awarding restitution at a point in time after the present notice of appeal had been filed and the appeal lodged in this court. Points (3) and (4) require reversal. The jury selection issue has not been preserved for appeal, Joiner v. State, 593 So.2d 554 (Fla. 5th DCA 1992), jurisdiction accepted, 604 So.2d 487 (Fla.1992); Brown v. State, 606 So.2d 742 (Fla. 1st DCA 1992). The restitution issue is mooted by our reversal. The question of prior consistent statements presents no substantial issue for our determination.
During closing argument, the prosecutor, having elicited during cross-examination appellant’s record of three prior felony convictions, (1) argued that the Hilltop Apartments is a dangerous place because “people like Bernard Brown hang out there, three-time convicted felon and (2) admonished the jury that it should judge Bernard Brown’s actions from the standpoint of a reasonable person, and not “judge this man’s actions as that of a three-time convicted felon who has been shot up and who has to carry a gun out there....” The court overruled defense objections to each of these comments.
The fact of prior convictions is admissible on the question of the defendant’s credibility, as it would be as to any other witness. § 90.610, Fla.Stat. (1989). The state argues unconvincingly that the comments set out above are merely proper comments on the defendant’s credibility. In point of fact, the remarks of the prosecutor suggest that Brown’s criminal history makes it more likely that the killing was criminal rather than justifiable, and further, that people who “hang out” at the Hilltop Apartments are likely to be seasoned criminals, rendering the premises dangerous for its other inhabitants. Neither the logic nor the truth of these inferences is properly before us, since we are constrained by well-established rules applicable to criminal cases. The evidence of criminal history was admissible only as it bore upon appellant’s credibility. His criminal propensity was not an issue. Accordingly, the trial court’s refusal to sustain objections to the prosecutor’s comments constituted error. Davis v. State, 397 So.2d 1005 (Fla. 1st DCA 1981). Neither are we inclined to the view that such was harmless error. In this case, the comments were purposeful and come dangerously close to appearing calculated to win the favor of the jury in a case in which the deceased victim presented an image that could generously be characterized as unsavory.[1] See, Brown v. State, 580 So.2d 327 (Fla. 5th DCA 1991).
Shortly after retiring to deliberate, the jury asked to be reinstructed on manslaughter as well as second-degree murder. Defense counsel asked the trial judge to reinstruct as well on justifiable homicide, specifically noting that manslaughter is a residual offense. The trial court again read the definitions of second-degree murder and manslaughter, but refused to define justifiable or excusable homicide. The manslaughter instruction read by the trial court “cross-referenced” justifiable and excusable homicide, by noting that “the defendant cannot be guilty of manslaughter *581 if the killing was either justifiable or excusable homicide, as I previously explained those terms.”
In Hedges v. State, 172 So.2d 824 (Fla.1965), the Supreme Court held in a unanimous opinion that in order to supply a complete definition of manslaughter as a degree of unlawful homicide, it is necessary to include a definition of its exclusions. Justifiable homicide and excusable homicide are exclusions to unlawful homicide. Kelsey v. State, 410 So.2d 988 (Fla. 1st DCA 1982). The Supreme Court has since stated that manslaughter is a “residual offense, defined by reference to what it is not.” Stockton v. State, 544 So.2d 1006, 1008 (Fla.1989). In order to define manslaughter completely, the definitions of justifiable and excusable homicide and murder must be included. Id.
The state argues that these rules of law notwithstanding, we should affirm, since the trial court cross-referenced justifiable and excusable homicide during the reinstruction on manslaughter. In our view, such cross-referencing does not meet the requirements of Stockton. We may assume that the jurors could not adequately remember the definitions of manslaughter and second-degree murder, since they requested reinstruction. The state would, in essence, ask us nonetheless to find that the same jurors, while uncertain of the definitions of the crimes, could nonetheless clearly recall the definitions of justifiable and excusable homicide, and that the mere mention of these words must have served to trigger this memory with enough clarity in their collective minds to rectify any technical shortcoming in the instruction. We defer to the case law which requires a complete instruction upon request. A complete instruction requires a definition of not only what manslaughter is, but what it is not.
REVERSED and REMANDED for a new trial on the charge of manslaughter.
MINER and ALLEN, JJ., concur.

. The examining pathologist testified that on autopsy, Richardson had fresh needle tracks on his arm, traces of cocaine in his blood, and traces of cocaine and morphine in his urine. Other evidence suggested an earlier instance of knifeplay involving Richardson.